Frank Showen *v.* Morris H. Moore

5-4222                                                   414 S. W. 2d 613

Opinion delivered May 8, 1967

[Rehearing denied June 5, 1967.]

*Holt, Park & Holt,* for appellant.

*House, Holmes & Jewell,* for appellee.

J. Fred Jones, Justice. This is an appeal from the Pulaski County Circuit Court and the question presented is whether or not the trial court erred in entering a summary judgment on the record before it in this case.

Morris H. Moore as plaintiff in the trial court, filed suit in unlawful detainer against Frank Showen to recover the possession of a dwelling house occupied by Showen. Showen retained possession under cross bond.

Moore alleged ownership of the property involved; that Showen had paid no rent since October 1964, but has wrongfully and without right held over and refused to quit possession notwithstanding demands therefor.

Showen answered by general denial and with the allegation "that the relationship of landlord and tenant does not now exist and has never existed between the plaintiff and the defendant or anyone under, by or through whom plaintiff claims the right to possession of

the property." * * * "that the plaintiff, Morris H. Moore, has no right to the possession of said property or any part thereof."

With the issues thus joined, Moore filed a motion for summary judgment and upon the pleadings, exhibits, interrogatories, and the deposition of Showen; the motion for summary judgment was granted and judgment for possession was entered in favor of Moore. Showen has appealed to this court, relying on the following point for reversal:

"There are genuine issues as to material facts that require the introduction of evidence in this case which has been denied to appellant by the granting of the summary judgment."

The record reveals the following facts:

Appellant is a disabled veteran, fifty-four years of age. Appellant was born in the house he now occupies and has lived there all his life. The property at one time belonged to appellant's grandfather and appellant lived in the house with his mother until her death in 1964, and has continued to occupy the house since his mother's death. Appellant's mother, Mrs. Showen, and appellee's mother, Mrs. Moore, were very close lifelong friends until Mrs. Moore's death about 1937. After the death of Mrs. Showen in 1964, appellant learned, for the first time, that the legal title to the property was in Mrs. Moore. He knew that Mrs. Moore had "helped" his mother "when they auctioned the place off at the court house," and after Mrs. Moore died in 1937, appellant knew that his mother continued to occupy the house under some kind of agreement between his mother and appellee, but did not actually see the written agreement until after his mother's death. Appellant's deposition on this point is as follows:

*   *   *

"A. I knew that Mrs. Moore when they auctioned the place off at the Court House, I knew that she helped mother.

Q. At that time?

A. In the auction. I knew that.

Q. From the legal title viewpoint, the first time you were aware of the fact that the actual legal title was in Mrs. Moore's name was after your mother's death, was it not?

A. That's right.

Q. And the first time you knew that your mother had entered into an agreement with—

A. Morris Moore.

Q. Morris Moore was after your mother's death?

A. It wasn't the first time I knew that there was some kind of an agreement. I never did see the actual agreement until after her death.

Q. You knew that your mother was there under some agreement with Mr. Morris Moore?

A. That's right.

\* \* \*

Q. Your mother let you live in the premises all of the time until her death?

A. Yes, sir.

Q. And you did not claim any interest in the property in contradiction of her claim to ownership I take it?

A. Not to her ownership. I have never claimed ownership, I mean before her death.

Q. Actually you were just born in the house?

A. That's right.

Q. And by reason of being a child of—

A. Mamie Showen.

Q. Mamie Showen, Mamie McCoppin Showen you just grew up there and there wasn't—

A. It was my lifelong home and so there is no question."

In answer to interrogatories propounded by appellee, the appellant stated that he claims an undivided one-half interest in the property as one of the two surviving heirs of his mother, who acquired title to the property through her father, Joseph McCoppin, and by gift Inter Vivos from Mrs. Moore, and that he has further acquired title to the property by adverse possession since the appellee made claim to the property as his own after the death of his mother, Mrs. Moore. In answer to interrogatories, appellant contended that he and his deceased mother paid the general taxes on the property for the years 1951 through 1962, and that he and his deceased mother had actual, continuous and uninterrupted possession of the property for approximately 70 years; that the property belonged to his grandfather, Joseph McCoppin; that he was born in the home on said property where he is now living, and his possession has been adverse since 1947. Appellant admits that he has never expended any sums for rent and does not have insurance in force on the property.

William Joseph McCoppin was a brother to Mrs. Showen and he also lived with Mrs. Showen and appellant in the property until his death in 1955.

On December 30, 1937, after the death of Mrs. Moore, the appellee entered into a lease agreement with Mrs. Showen and her brother. The lease agreement was filed for record in the Pulaski County recorder's office on October 25, 1939, and this lease is not questioned by appellant. Since this lease is so important to the decision we reach, it is copied in full as follows:

## LEASE CONTRACT

### 286

### To

32687 Morris Moore      Mamie McCoppin Showen et al

### LEASE CONTRACT

THE STATE OF ARKANSAS, County of Pulaski:
KNOW ALL MEN BY THESE PRESENTS:

That whereas, Mrs. Maude Addis Moore, prior to her death, owned the property in the City of Little Rock, Pulaski County, Arkansas, known as lots 15 and 16, in block No. 1 of Clark's Addition to the City of Little Rock, Arkansas, which is the property now in possession of and occupied by the undersigned; and

WHEREAS, the said Mrs. Maude Addis Moore during her lifetime permitted the undersigned to use and occupy said premises, in consideration that the undersigned would keep the improvements on said premises in a reasonable state of repair and pay for such repairs and keep the said property insured in some solvent insurance company and pay the premiums thereon, insuring the same in the name and for the benefit of Maude Addis Moore, and would pay all State, County, City and District taxes and assessments of every kind and character on said property, and the undersigned has used and occupied said property for a number of years under

such agreement with the said Mrs. Maude Addis Moore; and

WHEREAS, since the death of Mrs. Maude Addis Moore, said property is now owned by Morris Moore, her son, to whom the same was bequeathed by the will of said Maude Addis Moore:

NOW, THEREFORE, the undersigned (whether one or more) expressly acknowledges the ownership of said property by the said Morris Moore, and in consideration of the said Morris Moore permitting the undersigned to live upon, use and occupy said property, the undersigned has this day and does hereby agree with the said Morris Moore that the undersigned will keep said property in a fair and reasonable state of repair and pay all costs and expenses of such repairs, and pay all other items of expense that are proper and necessary in order to keep said property in a good, usable, and habitable condition and will pay all taxes, State, County, City and District due and to become due against said property and all assessments heretofore or hereafter made against the same, and will insure said property in some solvent insurance company and pay all the premiums thereon, having said policy or policies made to the said Morris Moore.

And the undersigned further agrees that possession, use and occupancy of said premises by the undersigned or anyone claiming by, through or under the undersigned, shall not and will not constitute or be construed to be adverse to the said Morris Moore, and it is further understood that during the existence of this contract the undersigned shall not be required to pay any rent upon or for said premises.

It is further understood that this contract can be terminated by either party at any time by either party giving to the other party thirty days advance notice of the date upon which termination shall be effective, which notice shall be given in writing by ordinary United

States mail, addressed to the undersigned at Little Rock, Arkansas, or to Morris Moore at Marshall, Texas, and upon cancellation or termination hereof, the undersigned will deliver possession of the above premises to the said Morris Moore or his agent upon the date of termination hereof as fixed by the notice aforesaid.

IN TESTIMONY OF WHICH, This instrument is executed this 30th, day of December, A. D. 1937.

Mamie McCoppin Showen

William Joseph McCoppin

This lease instrument was duly attested, notarized and filed for record on October 26, 1939, and no question is raised as to its authenticity or purpose.

Appellee filed his complaint under Ark. Stat. Ann. § 34-1503 (Repl. 1962) where "unlawful detainer" is defined as follows:

"Every person who shall willfully and without right hold over any lands, tenements or possession after the determination of the time for which they were demised, or let to him, or the person under whom he claims, or who shall peaceably and lawfully obtain possession of any such and shall hold the same willfully and unlawfully after demand made in writing for the delivery or surrender of possession thereof by the person having the right to such posessions, his agent or attorney, or who shall fail or refuse to pay the rent therefor when due, and after three 3 days' notice to quit and demand made in writing for the possession thereof by the person entitled thereto, his agent or attorney, shall refuse to quit such possession, shall be deemed guilty of an unlawful detainer."

Appellee filed his motion for summary judgment under Ark. Stat. Ann. § 29-211 (Repl. 1962). Subsection (c) of this statute provides:

*   *   *

"The judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A summary judgment interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages."

The case of *Webb* v. *Herpin*, 217 Ark. 826, 233 S. W. 2d 385, involved an action in unlawful detainer, and in that case this court said:

"This form of action is meant to provide the landlord with a summary means of ousting a tenant who refuses to pay his rent. By making the lease the tenant recognizes his landlord's title, and the latter ought not be required to jeopardize his ownership whenever he seeks to repossess the land. If the alleged tenant really has a valid claim of ownership he may either defend the possessory action by proving his title, as we have seen, or he may bring a concurrent action to put the title in issue."

In the case of *Griffin* v. *Monsanto Co.*, 240 Ark., 420, 400 S. W. 2d 492, this court said:

"The defendant's pleading is in substance a motion for a summary judgment. We so treat it. Such a motion cannot be used to submit a disputed question of fact to the trial judge. Testimony submitted with the motion 'must be viewed in the light most favorable to the party resisting the motion, with all doubts and inferences being resolved against the moving party.' Judgment should be entered summarily only if the evidence, when so considered, shows that there is no genuine issue as to any material fact in the case."

Appellant did not *allege title* in defense of appellee's claim to the right of possession, but in answer to interrogatories propounded by appellee, he based his claim on inheritance from his mother who acquired title through her father and by gift Inter Vivos from appellee's mother, Mrs. Moore, and also by adverse possession since the property was claimed by appellee.

It is clear from the lease agreement that after the death of Mrs. Moore, appellant's mother as well as her brother who lived with her, recognized appellee's ownership in the property. It is also clear from the lease and appellant's own testimony, that Mrs. Showen and her brother as well as the appellant himself, continued to occupy the property after Mrs. Moore's death, under the lease from the appellee. Mrs. Showen and her brother continued in possession under the lease signed by them until their deaths, and appellant obviously continues in possession under the same lease.

Appellant admits that he only knew that his mother was in possession of the property *under some kind of an agreement with appellee*. Yet appellant claims title through inheritance from his mother who admitted by her duly executed lease that she had no title. Appellant admits that he claimed no title or interest in the property adverse to his mother during her lifetime, and appellant does not question the authenticity of the recorded lease. The lease not only recognizes appellee's ownership in the property insofar as appellant's mother and her brother were concerned, it recognizes appellee as a landlord for appellant's mother *or anyone holding under her*. Appellant admits that he came into possession of the property through the permission of his mother and he admits that he has never paid rent and is in arrears on insurance and taxes.

We conclude that the lease agreement accomplishes the purpose for which it apparently was primarily intended; to give appellant's mother and her brother a home in exchange for the upkeep and payment of taxes,

and to prevent the loss of title by adverse possession to anyone holding under them.

We hold that there was no justiciable controversy presented on the pleadings and exhibits in this case, and that the trial court's decision on that point was based on substantial evidence and should be affirmed. By so holding in this unlawful detainer action, however, we do not foreclose appellant's right to try title to the property involved in an appropriate action.

Affirmed.